UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRYSTAL N. GREENWALD,**

    **Plaintiff,**

v.                                   Civil Action 2:23-cv-4100
                                       Magistrate Judge Chelsey M. Vascura

**UNITED STATES OF AMERICA,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Crystal N. Greenwald, sued Defendant, the United States of America, under 26 U.S.C. § 7422 for a refund of certain taxes paid on Plaintiff's 2020 federal tax return. The case was dismissed upon the Stipulation for Dismissal filed jointly by the parties on April 15, 2025. (ECF No. 28.) This matter, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), is now before the Court on Plaintiff's Motion for Attorneys' Fees under 26 U.S.C. § 7430. (ECF No. 29). For the reasons below, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

                I.        BACKGROUND

Plaintiff filed a 2020 Form 1040 with the Internal Revenue Service ("IRS"), reporting an adjusted gross income of $11,324 and $0 in tax liability. (2020 Form 1040-X, ECF No. 34-4). Plaintiff claimed a total refund of $8,196, representing a $5,920 earned income tax credit, a $2,050 additional child tax credit, and a credit of $226 for federal tax withholdings. (*Id.*). The IRS refunded Plaintiff the $226 in federal tax withholding but did not refund the earned income

or additional child tax credits. Plaintiff filed a refund claim in June 2022, reporting the same income and claiming the same tax credits (less the $226 in federal tax withholding) for a total refund of $7,970. The IRS denied Plaintiff's refund claim on April 18, 2023. (ECF No. 29-2, PAGEID #165.) On May 22, 2023, Plaintiff appealed the IRS's decision (ECF No. 29-2, PAGEID #159), but the appeal was denied on June 14, 2024. (ECF No. 29-2, PAGEID #200).

Plaintiff contends that, a few days after she commenced her appeal, she submitted a qualified offer under 26 U.S.C. § 7430(g) to the IRS by letter dated May 24, 2023. (*See* Qualified Offer, ECF No. 29-2, PAGEID #155.) United States Postal Service tracking information indicates that this letter was delivered on May 27, 2023, to the Internal Revenue Service, PO Box 9045, Andover, MA  01810-9045. (*Id.* at PAGEID #157.) The signature of the recipient indicates that the mailing was received at "IRS, 310 Lowell." (*Id.* at PAGEID #156.) However, the government contends that it has no record of receiving Plaintiff's qualified offer. (*See* Marcum Decl., ECF No. 34-1.)

On December 13, 2023, Plaintiff filed a complaint against Defendant in the United States District Court for the Southern District of Ohio, seeking a recovery of $7,970.00, plus statutory interest. (ECF No. 1.) After participating in discovery and an unsuccessful mediation, Plaintiff and Defendant filed a stipulation for dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) on April 15, 2025. (ECF No. 28.) On May 6, 2025, Defendants issued a Notice of Adjustment, allocating a payment to Plaintiff for her full requested amount of $7,970, plus $2,185.81 in statutory interest. (ECF No. 29-2, PAGEID #202). In the notice, Defendant indicates that the payment is made "in accordance with the concession of the government in the case of *Greenwald v. United States*, Case No. 2:23-cv-4100 . . . ." (*Id.*)

2

Plaintiff's Motion for Attorney's Fees followed on May 30, 2025. (ECF No. 29). Therein, Plaintiff seeks "a minimum of $37,505.00 in attorney fees" as a prevailing party under 26 U.S.C. § 7430. Defendant opposes, arguing that Plaintiff is not a prevailing party, did not make a qualified offer, and is further not entitled to attorney's fees due the settlement exception under § 7430(c)(4)(E)(ii)(I). Defendant also contends that Plaintiff's requested attorney's fees are unreasonable. (Def.'s Mem. in Opp'n, ECF No. 34.)

## II. STANDARD OF REVIEW

Under 26 U.S.C. § 7430, a "prevailing party" may be awarded attorney's fees and costs against the Government, provided that the prevailing party exhausted available administrative remedies before the IRS prior to commencing the civil proceeding and that the fees and costs are reasonable and not payable by any other party. 26 U.S.C. § 7430(a), (b). The statutory definition of "prevailing party" requires that the party "substantially prevailed" with respect to the amount in controversy and that the position of the United States was not "substantially justified." § 7430(c)(4)(A)–(B).

Alternatively, a party shall be treated as a "prevailing party" if "the liability of the taxpayer pursuant to the judgment in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party." § 7430(c)(4)(E)(i). But a party cannot rely on a qualified offer to establish "prevailing party" status if the judgment in the party's favor was "issued pursuant to a settlement." § 7430(c)(4)(E)(ii)(I). Further, the "qualified offer" route to "prevailing party" status is unavailable if the party is a "prevailing party" under § 7430(c)(4)(A). § 7430(c)(4)(E)(iv).

Even if the moving party meets the requirements for an award of attorney's fees and costs, the Court ultimately retains discretion as to whether to award fees and the appropriate

3

amount of the award. *See William L. Comer Fam. Equity Pure Tr. v. Comm'r*, 958 F.2d 136, 139 (6th Cir. 1992).

### III. ANALYSIS

**A. Plaintiff is not a prevailing party under § 7430(c)(4)(A)–(B).**

To obtain an award of litigation costs, including attorney's fees, under 26 U.S.C. § 7430, Plaintiff must be a "prevailing party." § 7430(a). This means, among other things, she must have "substantially prevailed with respect to the amount in controversy," or "substantially prevailed with respect to the most significant issue or set of issues presented." § 7430(c)(4)(A). Defendant does not dispute that Plaintiff substantially prevailed in this case, as she obtained the full amount of the refund sought in her Complaint.

But the inquiry does not end there. Plaintiff must also demonstrate that the IRS's position was not substantially justified. § 7430(c)(4)(B)(i).[1] Plaintiff cannot make this showing. Plaintiff's refund claim turns on whether she was entitled to the Earned Income Tax Credit under 26 U.S.C. § 32(a)(1) and the Child Tax Credit under 26 U.S.C. § 24(a), (h)(2) for the year 2020. To be eligible for these credits, Plaintiff needed to demonstrate that each of her two children was a "qualifying child" under 26 U.S.C. § 156(c), which requires, among other things, that the children had the same principal place of abode as Plaintiff for more than one-half of the taxable year. § 156(c)(1)(B), (D). The IRS denied these credits on grounds that Plaintiff "failed to substantiate that [Plaintiff] was the custodial parent of both children and that they resided with [Plaintiff] for more than 6 months in the tax year." (December 18, 2023 Letter, ECF No. 29-2,

---

[1] Plaintiff contends that it is irrelevant whether the IRS's position was substantially justified, as she qualifies as a prevailing party under the Qualified Offer Rule of § 7430(c)(4)(E)(i). (Pl.'s Mot. 5, ECF No. 29-1.) But because § 7430(c)(4)(E) "shall not apply to a party which is a prevailing party under any other provision of" § 7430(c)(4), the Court must first determine whether Plaintiff qualifies as a prevailing party under § 7430(c)(4)(A)–(B) before considering whether the Qualified Offer Rule applies.

PAGEID #171). In response, Plaintiff submitted documentation demonstrating that the two children in question, then 5 and 6 years of age, were removed from her custody on August 1, 2020, by the Court of Common Pleas for Licking County, Ohio. (December 28, 2023 Letter and Attachments, ECF No. 29-2, PAGEID #175–96.) The IRS again denied Plaintiff's refund claim, stating "[t]he information you submitted provided no basis to allow any part of your claim." (June 14, 2024 Letter, ECF No. 29-2, PAGEID #200.) The IRS continues to maintain that Plaintiff's documentation does not establish that the children lived with Plaintiff for more than six months of 2020. (Def.s' Mem. in Opp'n 8–9, ECF No. 34.)

The Court agrees. The documentation Plaintiff submitted demonstrates that the two children lived with Plaintiff immediately before they were removed from her custody on August 1, 2020, but Plaintiff did not submit documents demonstrating that the children lived with her for more than six months in 2020. Plaintiff could have submitted other documentation to prove the children's residence, such as a lease agreement,[2] medical or school records, or a statement from an employer, place of worship, or shelter, but she did not. *See*, *e.g.*, Form 886-H-EIC Toolkit, https://www.irs.gov/credits-deductions/individuals/earned-income-tax-credit/form-886-h-eic-toolkit (last visited September 22, 2025); Form 14815, Supporting Documents to Prove the Child Tax Credit (CTC) and Credit for Other Dependents (ODC) for 2018-2025, available at https://www.irs.gov/pub/irs-pdf/f14815.pdf. The IRS was therefore substantially justified in concluding that Plaintiff had not substantiated that her children lived with her for more than half

---

[2] Plaintiff did submit a lease agreement listing her children as residents and reflecting a move-in date of December 23, 2020, but this substantiates at most that her children lived with her for eight days in 2020, well under the six-month standard she must meet. (*See* Lease Agreement, ECF No. 37-1, PAGEID #446–56.)

5

the year and denying Plaintiff's refund on that basis. Plaintiff is therefore not a prevailing party under § 7430(c)(4)(A)–(B).

**B.**     **Plaintiff is a prevailing party under § 7430(c)(4)(E).**

Plaintiff may yet qualify as a prevailing party under the Qualified Offer Rule, which states that a party shall be treated as a prevailing party "if the liability of the taxpayer pursuant to the judgment[3] in the proceeding (determined without regard to interest) is equal to or less than the liability of the taxpayer which would have been so determined if the United States had accepted a qualified offer of the party under subsection (g)." 26 U.S.C. § 7430(c)(4)(E). A "qualified offer" is a written offer that is made by the taxpayer to the United States during the qualified offer period, specifies the offered amount of the taxpayer's liability, is designated at the time it is made as a qualified offer, and remains open during the period beginning on the date it is made and ending on the earliest of the date the offer is rejected, the date the trial begins, or the 90th day after the date the offer is made. 26 U.S.C. § 7430(g).

Plaintiff contends that she sent a qualified offer to Defendant on May 24, 2023. (*See* Qualified Offer, ECF No. 29-2, PAGEID #155.) Defendant does not dispute that, if the IRS had in fact received the offer Plaintiff attaches as an exhibit, it would constitute a qualified offer. That is, it was sent during the appropriate time period, it specified the offered amount of the taxpayer's liability as $0 and an overpayment of $7,970, it was identified as a qualified offer

---

[3] Plaintiff contends that the stipulated dismissal qualifies as "judgment" for purposes of this statute, citing *Keith Mfg. Co. v. Butterfield*, 955 F.3d 936, 940 (Fed. Cir. 2020) (finding that a voluntary stipulation with prejudice may be treated a judgment for purposes of attorney's fees under Federal Rule of Civil Procedure 54) and *Internet Media Interactive Corp. v. Shopify Inc.*, No. CV 20-416 (MN), 2020 WL 6196292, at *2 (D. Del. Oct. 22, 2020) (voluntary dismissals with prejudice can confer prevailing-party status for purposes of attorneys' fees under a patent statute). Defendant does not contest this point.

6

under § 7430(g), and it remained open "until the earliest of (a) the date the offer is rejected, (b) the date the trial begins, or (c) the 90th day after the offer is made." (*Id.*) Defendant, however, disputes that Plaintiff mailed the offer to the appropriate address and denies that the IRS ever received Plaintiff's qualified offer.

Plaintiff is directed by 26 C.F.R. § 301.7430–7 to deliver the qualified offer to "the office or personnel within the Internal Revenue Service, Office of Appeals, Office of Chief Counsel . . . or Department of Justice that has jurisdiction over the tax matter at issue in the administrative or court proceeding." 26 C.F.R. § 301.7430–7(c)(2)(i). If the appropriate office or personnel is unknown to the taxpayer (and if the tax dispute has not yet reached the federal courts), the taxpayer may instead "deliver the offer" "to the office that sent the taxpayer the first letter of proposed deficiency, which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals." 26 C.F.R. § 301.7430-7(c)(2)(i)(D). Here, Defendant contends, and Plaintiff does not dispute, that Plaintiff could not have known what office or appeals officer would be assigned to her appeal case on May 24, 2023, because an appeals officer was not assigned until December 18, 2023. (*See* Dec. 18, 2023 Letter, ECF No. 29-2, PAGEID #18.) Accordingly, Plaintiff was required to deliver her qualified offer to the office that sent the first letter of proposed deficiency, which allowed her an opportunity for administrative review in the IRS Office of Appeals—an office located at 310 Lowell St., Stop 854, Andover, MA 01810-9045. (*See* August 2, 2021 Notice of Deficiency, ECF No. 34-2, PAGEID #336.) Yet Plaintiff's purported qualified offer was addressed to Department of the Treasury, Internal Revenue Service, PO Box 9045, Andover, MA 01810-9045. (Qualified Offer, ECF No. 29-2, PAGEID #155.)

United States Postal Service tracking information indicates that Plaintiff's May 24, 2023 letter containing her qualified offer was delivered on May 27, 2023, to the Internal Revenue Service, PO Box 9045, Andover, MA  01810-9045. (*Id.* at PAGEID #157.) The signature of the recipient indicates that the mailing was received by "IRS, 310 Lowell." (*Id.*at PAGEID #156.) However, Defendant contends that it has no record of receiving Plaintiff's qualified offer. (*See* Marcum Decl., ¶ 6, ECF No. 34-1.) Had Plaintiff in fact submitted a qualified offer, Defendant asserts, the IRS "would record receipt of the qualified offer in its case records. Those records would also include notes regarding the office's evaluation of the qualified offer and a copy of the response provided to the taxpayer submitting the offer." (*Id.* at ¶ 5.)

Plaintiff points out that the IRS sent her a July 5, 2023 letter referencing "[Plaintiff's] inquiry of May 26, 2023" and stating that "[w]e'll contact you again within 90 days to explain what action we're taking." (July 5, 2023 Letter, ECF No. 29-2, PAGEID #205.) Plaintiff denies making any inquiry dated May 26, 2023; nor has Defendant produced a copy of any correspondence from Plaintiff dated May 26, 2023. Accordingly, Plaintiff contends that the July 5 letter simply reflects a typo and, in fact, responds to Plaintiff's May 24, 2023 qualified offer, demonstrating that the IRS received her qualified offer.

The Court finds that, on balance, the evidence suggests that Plaintiff delivered a qualified offer to the appropriate office as required by the relevant statute and regulation. Although Plaintiff's qualified offer was *addressed* to PO Box 9045 instead of 310 Lowell Street, both addresses involve the same ZIP+4 code, and the USPS tracking records reflect that the letter was *delivered* to "IRS, 310 Lowell." As 26 C.F.R. § 301.7430-7(c)(2)(i)(D) requires that a qualified offer be *delivered* to the appropriate address, and not that it be *addressed* to any particular location (nor that the IRS be able to locate it in its files or produce records evaluating the offer),

8

Plaintiff satisfied all of the requirements of the Qualified Offer Rule. Accordingly, because Plaintiff obtained the full amount of the refund sought in her qualified offer, she is a prevailing party under 26 U.S.C. § 7430(c)(4)(E).

C.   **The government's concession was not a settlement for purposes of § 7430(c)(4)(E).**

Plaintiff has one last hurdle to clear as to her prevailing party status: the Qualified Offer Rule does not apply to "any judgment issued pursuant to a settlement." 26 U.S.C. § 7430(c)(4)(E)(ii)(I). Plaintiff contends that the stipulated dismissal in this case reflects not a settlement, but a unilateral concession by the Government. Plaintiff cites *Knudsen v. Comm'r*, 793 F.3d 1030 (9th Cir. 2015), which noted that a settlement is a contract requiring an objective manifestation of mutual assent to its essential terms, typically established through offer and acceptance. *Id.* At 1034. Although the *Knudsen* plaintiff submitted a qualified offer to the IRS, the IRS did not respond. Instead, much later, and only after the parties submitted a stipulated record for trial to the Tax Court, the Government conceded the case. Finding no bargained-for exchange and no settlement negotiations on the record before it, the Court of Appeals for the Ninth Circuit concluded that the IRS's unilateral concession of the case was not a settlement for purposes of § 7430(c)(4)(E). Similarly, in *Est. of Lippitz v. Comm'r*, 94 T.C.M. (CCH) 330 (T.C. 2007), the taxpayer made a qualified offer to which the IRS did not respond. Again, much later, after the taxpayer had submitted a motion for summary judgment and refused a settlement offer from the IRS, the IRS unilaterally conceded the case. *Id.* at *8. The *Lippitz* court acknowledged that there could be scenarios in which a concession did function as a settlement, but that such a scenario was not before it because the Government waited until after the taxpayer's motion for summary judgment, which the *Lippitz* court likened to a concession after trial. *Id.*

Defendant attempts to distinguish this case law on this action's relatively early procedural posture. True, this case was not on the brink of trial, nor had Plaintiff filed a motion for summary

9

judgment, when the Government conceded the case. But the principle underlying both *Knudsen* and *Lippitz* is not that late concessions cannot be settlements, but that concessions made in the absence of a contract between the parties cannot be settlements. Both courts relied on the fact that the IRS did not accept the taxpayer's qualifying offer and that the Government's concession was not grounded in an agreement between the parties, as reflected by the lengthy period that elapsed between qualified offer and concession. Such is the case here. If the parties engaged in settlement negotiations and reached an agreement to conclude this case, neither party has placed evidence of that agreement in the record. Indeed, the Government's own description of its decision to concede lacks any indication of mutual assent: "After the United States took Plaintiff's deposition and heard her testimony under oath, it evaluated the available evidence and, considering all factors, including the amount of the claim, determined that concession was preferable to continued litigation." (Def.'s Mem. in Opp'n 6, ECF No. 34.) On this record, the Court concludes that no settlement occurred. This means that Plaintiff enjoys the benefit of the Qualified Offer Rule and is therefore a "prevailing party" for purposes of § 7430(a).

D.  **Plaintiff exhausted her administrative remedies under § 7430(b)(1).**

In addition to the prevailing party requirement, taxpayers must have exhausted their administrative remedies prior to filing suit to obtain an award of attorney's fees. 26 U.S.C. § 7430(b)(1). Generally, a party has not exhausted administrative remedies unless that party "participates in an Appeals office conference." 26 C.F.R. § 301.7430-1(b)(1)(i). A party is deemed to have participated in an Appeals office conference if the party "discloses to the Appeals office all relevant information regarding the party's tax matter to the extent such information and its relevance were known or should have been known to the party or qualified representative at the time of such conference." 26 C.F.R. § 301.7430-1(b)(2). This requirement is "designed to require the taxpayer to disclose information needed by the IRS for that decision or

10

forego the recovery of his litigation costs." *Rogers v. Comm'r,* 53 T.C.M. (CCH) 1473 (T.C. 1987).

Here, Plaintiff requested an Appeals office conference as part of her Small Dollar Appeal on May 22, 2023 (ECF No. 29-2, PAGEID #159–61). The IRS granted that request on July 13, 2023, and told Plaintiff it would assign an independent appeals officer to her case (ECF No. 37-1, ECF No. 415–17). Plaintiff next heard from the appeals officer on December 18, 2023, when the appeals officer informed Plaintiff that the documentation she had submitted thus far (court documents reflecting that Plaintiff's children were removed from her custody on August 1, 2020, and a lease agreement reflecting a move-in date of December 23, 2020) were not sufficient to substantiate that her children lived with her for more than six months of the year. (ECF No. 29-2, PAGEID #170–73.) The appeals officer also invited Plaintiff to submit any additional documentation within 30 days. (*Id.*) Plaintiff responded on December 28, 2023, again submitting the same court documents reflecting the children's removal on August 1, 2020. (ECF No. 29-2, PAGEID #175–96.) On June 14, 2024, the appeals officer denied Plaintiff's appeal because "[t]he information [Plaintiff] submitted provided no basis to allow any part of your claim." (ECF No. 29-2, PAGEID #198–200.)

Defendant contends that Plaintiff failed to participate in an Appeals conference because "Plaintiff failed to provide documentation to substantiate her claim for credits" and "Plaintiff's failure to provide documents to support her claim shows her failure to actually participate in the appeals process." (Def.'s Mem. in Opp'n 2, ECF No. 34.) But the pertinent regulation does not require that Plaintiff have successfully persuaded the appeals officer that she was entitled to a refund in order to have participated in an Appeals office conference; it requires only that Plaintiff provided the relevant information that was known, or should have been known, to her at the time

11

of the conference. *See* 26 C.F.R. § 301.7430-1(b)(2). Defendant has made no suggestion that Plaintiff held anything back in the administrative process or tried to ambush the Government during this litigation. In prior correspondence with the IRS, Plaintiff represented that she had attempted to assemble additional records reflecting the children's residence, but was unable to do so. (April 10, 2023 Letter, ECF No. 37-1, PAGEID #419–34.) Defendant even points out that Plaintiff produced no new documents in discovery during this civil action. (*See* Def's. Mem. in Opp'n 6, ECF No. 34 ("In response to the United States' interrogatories and requests for production, Plaintiff still did not produce any documentation to support her claim for the credits.")). All the available evidence suggests that Plaintiff produced to the IRS all relevant information whose existence and relevance was known to her at the time of the Appeals office conference in compliance with § 310.7430-1(a)(2). Plaintiff therefore participated in an Appeals office conference and exhausted her administrative remedies.

**E.     Plaintiff's requested award of attorney's fees and costs is largely reasonable.**

Having satisfied the requirements of an award attorney's fees under 26 U.S.C. § 7430, the Court now turns to the appropriate amount of the award. In calculating the award of attorney's fees, the "primary concern" "is that the fee awarded be reasonable." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). That is, the award should be "one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Id.* (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) and *Blum v. Stenson,* 465 U.S. 886, 897 (1984)). The starting point for the Court's analysis is to determine the fee applicant's "lodestar," which is "the proven number of hours reasonably expended on the case by an attorney, multiplied by his court-ascertained reasonable hourly rate." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) and *Reed*, 179 F.3d at 471.

Here, the hourly rate is capped by statute and adjusted for inflation annually. *See* 26 U.S.C. § 7430(c)(1)(B)(iii). Plaintiff seeks an award of attorney's fees for legal services provided to Plaintiff in 2023, 2024, and 2025; the maximum hourly rates for those years are $230, $240, and $250, respectively. *See* Rev. Proc. 2022-38, I.R.B. 2023-48 §3.60 (ECF No. 29-2, PAGEID #233); Rev. Proc. 2023-34, I.R.B. 2023-48 §3.61 (*Id.* at PAGEID #261); Rev. Proc. 2024-40, I.R.B. 2024-45 §3.61 (*Id.* at PAGEID #289). Plaintiff seeks the maximum statutory rate for each year, and Defendant does not contest this request. Given Plaintiff's counsel's credentials and many years of experience as attested to in their declarations (ECF No. 29-2, PAGEID #293–311), the Court finds the maximum statutory rates to be reasonable.

However, not all of the hours claimed by Plaintiff's counsel are compensable. First, because Plaintiff's prevailing party status is grounded in her Qualified Offer, she is entitled to only those fees "incurred on and after the date of such offer." § 7430 (c)(4)(e)(iii)(II). Accordingly, all time entries prior to Plaintiff's May 24, 2023 Qualified Offer, totaling 7 hours and $1,610 in fees, are disallowed. Second, the Court agrees with Defendant that many of the billing entries contain insufficient detail for the undersigned to assess their reasonableness. For example, many records contain only the description, "Internal Case Discussion" or "Research" without further explanation. These entries, totaling 17.6 hours and $4,314 in fees, are disallowed. Subtracting these entries leaves a remaining lodestar amount of $31,581.

But "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. The results obtained by counsel are another important consideration that may lead the Court to adjust the lodestar amount. *Id.* "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *The Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Hensley*, 461 U.S. at 435.)

13

Here, Plaintiff is a prevailing party not only in the technical, statutory sense, but also in the sense of recovering 100% of the relief sought in her Complaint. Thus, the lodestar amount need not be adjusted downward when Plaintiff was fully successful, even though the refund plus interest Plaintiff recovered is only a fraction of the lodestar.

Nor does the Court find it unreasonable that Plaintiff's counsel spent significant time drafting her Motion for Attorney's fees. Given the statutory requirements for an award of fees under § 7430, the parties needed to establish whether Defendant's position was substantially justified and whether Plaintiff exhausted her administrative remedies, essentially arguing the merits of the case on what would otherwise be a collateral motion. This makes the approximately $10,000 in fees spent in drafting the motion reasonable. Nor does *Pablo Lorenzo v. Barr*, 806 F. App'x 431 (6th Cir. 2020), establish a "presumptive cap" of 10% of the amount sought for merits litigation on such "fees for fees," as argued by Defendant. *See id.* at 438 (noting that "[t]he case law provides us with no hard-and-fast rules regarding a reasonable proportion between the fees for the merits litigation and the fees for [attorney's fee requests]" and concluding only that "10% is a reasonable proportion to apply *in the present case*") (emphasis added).

Defendant's final argument is that the Court should use its discretion inherent in the permissive language of § 7430(a)—that a "prevailing party *may* be awarded" attorney's fees—to deny Plaintiff's request for attorney's fees in its entirety. Defendant complains that Plaintiff repeatedly failed to provide the necessary documentation to substantiate her claims and nevertheless insisted on demanding the full amount of her requested refund rather than engaging the IRS in settlement discussions. Defendant contends that "[i]f Plaintiff had provided necessary documentation during the IRS proceedings, the IRS may well have had a different view of Plaintiff's claim," and "[t]he government should not now have to bear the costs of her failure to

14

maintain documents to substantiate her claim for credits." (Def.'s Mem. in Opp'n 14, ECF No. 34.) But as Defendant acknowledges, Plaintiff produced no further documentation as part of discovery and Defendant nevertheless voluntarily conceded Plaintiff's claim. Had Defendant done so at the outset of Plaintiff's refund request, the parties would have avoided all litigation costs. Based on the record before the Court, it does not appear that Defendant is any less responsible than Plaintiff for the accrual of attorney's fees. The Court therefore finds an award of attorney's fees under § 7430 appropriate, despite the discretionary language of the statute.

In sum, the Court finds that Plaintiff has reasonably incurred $31,581 in attorney's fees through the filing of her motion. Plaintiff further requests that, if the Court grants an award of attorney's fees, that Plaintiff be permitted to submit a supplemental fee request for time spent after May 30, 2025. (Pl.'s Reply 23, ECF No. 37). To avoid further litigation and accrual of further "fees on fees," the Court awards an additional 10 hours for time spent drafting Plaintiff's 23-page reply brief at the maximum statutory rate of $250, for an additional award of $2,500.

## IV. DISPOSITION

For the reasons above, Plaintiff's Motion for Attorneys' Fees under 26 U.S.C. § 7430 (ECF No. 29) is **GRANTED IN PART and DENIED IN PART**. Defendant is **ORDERED** to pay Plaintiff a total of $34,081 in attorney's fees.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE